**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

FRANK R. ZOKAITES,                          )
                                            )
                    Plaintiff,              )
                                            )
        vs.                                 )        **2:06cv48**
                                            )        **Electronic Filing**
LAND-CELLULAR CORPORATION and               )
ROBERT MOSES,                               )
                                            )
                    Defendants.             )

## OPINION

Plaintiff commenced this action seeking equitable relief to protect his purported right to

damages under a loan agreement ("funding agreement") by filing a complaint in equity in the

Court of Common Pleas of Allegheny County, Pennsylvania, on December 30, 2005. Defendants

removed the action on January 12, 2006. Presently before the court are defendants' motion to

dismiss, stay or transfer the action and plaintiff's motion for a temporary restraining order. For

the reasons set forth below, defendants' motion will be granted in part, the action will be

transferred to the Southern District of Florida, and plaintiff's motion for a temporary restraining

order will be denied without prejudice to renew after the action has been transferred.

Plaintiff is a stockholder, director and creditor of defendant Land-Cellular Corporation

("Land-Cellular"). Land-Cellular is a closely held corporation incorporated under Florida law

with its principal place of business located in Pembroke Pines, Florida.  Robert Moses is the

principal shareholder of the corporation. Plaintiff is one of five directors on Land-Cellular's

Board of Directors. Moses also is a director. Moses and two of the remaining directors are

citizens of Florida, one director resides in Atlanta, Georgia, and plaintiff resides in Wexford,

Pennsylvania. Plaintiff has loaned money to Land-Cellular on at least five occasions in the past.[1]

---

[1] Plaintiff became a stock holder of Land-Cellular through a subscription agreement
wherein he obtained shares of stock in exchange for lending Land-Cellular money.  The
subscription agreement was prepared by plaintiff's and Land-Cellular's Florida counsel, attorney
Jeffery M. Siskind, Esquire, of Palm Beach, Florida.  Plaintiff currently owns 18.5% of the stock

Plaintiff received payment in full on the first four loans.

The current dispute between the parties arises from a loan plaintiff made to Land-Cellular on March 28, 2005, in the amount of $200,000.00. The loan assertedly is secured by a first lien position on all of Land-Cellular's assets and the proceeds generated therefrom. This includes a security interest in its inventory, machinery, equipment, furnishings, vehicles, accounts receivable, and all generated proceeds from these assets. The loan had a six month maturity date, with the principal and interest to be paid in full by September 30, 2005. Moses personally guaranteed the loan. Defendants failed to pay the principal when it became due. Plaintiff claims entitlement for breach as follows: $200,000.00 in principal; $600.00 in interest for November, 2005; $6,200.00 for interest for the months of December, 2005, and January 2006; $5,600.00 for interest in February, 2006; and approximately $15,000.00 in attorneys' fees as of February 28, 2006. Pursuant to the agreement plaintiff also seeks to compel Moses to transfer two percent of the stock of Land-Cellular to plaintiff as part of the remedy for breach.

In November and December of 2005 the parties sought to work out a compromise for defendants' failure to pay the principal of the loan in a timely manner. Part of the proposal advanced by plaintiff was his gaining direct control over Land-Cellular's accounts receivable. Defendants were unwilling to accede to plaintiff's demands and retained outside counsel to review plaintiff's proposed modifications to the funding agreement. Negotiations continued and the parties exchanged correspondence between December 2, 2005, and December 16, 2005. The parties were unable to reach a compromise.

Land-Cellular filed suit against plaintiff in the Southern District of Florida on December 8, 2005. It served the complaint on plaintiff on December 14, 2005. Plaintiff tried to negotiate with Moses on December 16, 2005. On December 21, 2005, plaintiff advised defendants that he intended to file suit on the funding agreement. Plaintiff thereafter filed his "Complaint for Equitable Relief and Damages" in the Court of Common Pleas of Allegheny County as indicated

---

in Land-Cellular.

2

above. After defendants removed the action they filed the pending motion to dismiss, stay or transfer on January 19, 2006.

Defendants note that virtually every aspect of this case is related to Florida. Land-Cellular is a Florida corporation that conducts its business in Florida. All of its assets are located in Florida. Its corporate and business records are in Florida. All meetings by its board occurred in Florida. All of its directors except plaintiff reside in or close to Florida. All witnesses to the funding agreement and the pertinent dealings between the parties are located in Florida. Enforcement of any judgement obtained by plaintiff would have to occur in Florida. Execution on any company assets would have to occur in Florida. Plaintiff seeks to have a Florida corporation enjoined and is seeking to compel a Florida resident to transfer two percent of the stock of a closely held Florida corporation. Any security interest plaintiff has in the assets of Land-Cellular is based on the validity of a Uniform Commercial Code filing governed by the laws of Florida. In addition, plaintiff travels to Florida regularly and has established business locations in Florida.

In the Florida action, defendants seek to have the present and each past loan transaction declared to be unenforceable based on a violation of Florida's usury laws. Specifically, defendants aver in that action at counts I through IV that the interest rates charged by plaintiff (46.9% on oral loan agreement; 36% on written loan 1; 36% on written loan 2; and 36.5% on written loan 3) constitute a violation of Florida's criminal laws prohibiting loan sharking and seek to have plaintiff forfeit both the principal and interest paid or to be paid by defendants. At Count V defendants aver that plaintiff breached his fiduciary duty as a director of Land-Cellular by assisting the company in borrowing money at the exorbitant interest rates and by forwarding letters to all of Land-Cellular's customers, venders, investors, and potential suitors containing statements about Land-Cellular's indebtedness to plaintiff, his right to its accounts receivable, and a statement that any payment made to Land-Cellular would be ineffective in extinguishing the debt. These activities are alleged to have been undertaken in a malicious effort to thwart an

3

offer by an outside publicly traded company to purchase Land-Cellular for $2,000,000.00. Defendants further advance a claim for tortious interference with business relations based on this same conduct.

Plaintiff has filed a motion in the Southern District of Florida to dismiss in the Florida action, contending that each claim fails to state a claim upon which relief can be granted. Plaintiff maintains that defendants have consented to the application of Pennsylvania law and each loan was and the current loan is controlled by Pennsylvania's usury laws, which provide that the laws of usury do not apply to business loans in excess of $10,000.00 or any loan in excess of $50,000.00. In the alternative, plaintiff maintains that even if Florida law were applicable, only the amount of interest exceeding the legal interest rate would by excisable/recoverable, thereby precluding satisfaction of the amount in controversy for diversity jurisdiction. The allegations for breach of the duty of loyalty to the corporation are purportedly deficient because plaintiff was only one of five directors on the company's board, Pennsylvania law applies in any event, making the loans "not usurious," and a director may loan money to a corporation in the absence of fraud or bad faith, neither of which is raised by the averments. Plaintiff asserts he had a contractual right to send the letters to the customers of Land-Cellular in an effort to collect the money owed to him and defendants have failed to identify any specific vendor, investor or potential suitor that received the subject letter, making this aspect of count V deficient as well. Plaintiff defends against count VI on the same grounds, asserting the amended complaint fails to identify any specific relationship that was disrupted, injured or terminated.

Plaintiff filed the instant action, which he characterizes as "simply a collection action" instituted to collect a debt. The specific counts of the complaint are: Count I - Injunction (Land-Cellular); Count II - Injunction (Moses); Count III - Receiver (Land-Cellular); Count IV- Breach of Contract (Land-Cellular); Count V - Conspiracy/Defrauding Secured Creditors (Land-Cellular and Moses); and Count VI - Piercing the corporate veil (Moses). The action is one in equity and the gravamen of the complaint is that plaintiff is the only secured creditor of Land-Cellular and

4

since Land-Cellular defaulted on the funding agreement it has diverted "proceeds from the accounts receivable and inventory away from Zokaites and has used the proceeds thereof for other purposes." Complaint at ¶ 14. In addition, chief operating officer Moses has let the company deteriorate to the point that it is unable to continue its operations as an on going concern and pay its debts as they become due. Moses also dominates and controls the operations and finances of Land-Cellular and has diverted funds from its business operations for his own personal use and enjoyment. "Land-Cellular and Moses also have colluded and conspired together with a common, unlawful purpose of defrauding Zokaites by failing to pay Zokaites the sums owed to him" and in furtherance of this agreement have diverted funds from the secured assets for purposes other than repaying Zokaites. Complaint at ¶ 36. Furthermore, plaintiff avers that "[t]he corporate form of Land-Cellular is an artifice and a sham whereby Moses routinely uses Land-Cellular for his own personal interests and disregards corporate formalities and avoids legal obligations." Complaint at ¶ 43. Based on these allegations, the complaint seeks injunctive relief (1) enjoining defendants from selling, conveying, collecting or otherwise disposing of the assets which assertedly secure the loan in question, (2) disgorging all funds Land-Cellular has collected since default and paying those loans over to plaintiff, (3) providing plaintiff with a current customer list, a current accounts receivable list, an inventory list and the location of all assets subject to Zokaites' security interest, and (4) compelling Moses to transfer two percent of the stock in Land-Cellular to plaintiff. Plaintiff also seeks the appointment of a receiver to protect against the further deterioration of Land-Cellular. Finally, Zokaites claims entitlement to pierce the corporate veil and hold Moses personally liable for the debts of Land-Cellular.

Plaintiff's emergency motion for a temporary restraining order is premised on the same allegations contained in his complaint. To wit, he asserts defendants are dealing with assets and diverting the proceeds therefrom to other uses (including for the benefit of Moses) and are permitting Land-Cellular to deteriorate financially. He further asserts Moses has been absent from work for the past three or four weeks, has not been tending to the business affairs of Land-

5

Cellular, and  is contemplating walking away from the business because he is disgusted.  Based on an October 1, 2005, balance sheet, Land-Cellular has a negative net worth in excess of $1,000,000.00, and it has kept itself afloat by borrowing money "from unsuspecting persons such as Zokaites," including Moses' father and brother and the other board members, who are unsecured creditors.  In addition, Land-Cellular has lost $266,935.36 for the 2005 calender year as of October 30, 2005.  Consequently, Zokaites is at risk of losing the ability to collect the money he is owed because defendants assertedly are diverting the proceeds from Land-Cellular's assets to finance its losses and for other "improper" purposes.

The court held a hearing on plaintiff's emergency motion on March 6, 2006, at which plaintiff and Moses provided testimony in support of and opposition to plaintiff's motion for a temporary restraining order or appointment of receiver.  The testimony revealed that Land-Cellular is a start-up technology company in the business of developing high speed modems for automatic teller machines and similar large scale senders/consumers of data transferred over the internet.  Much of the business involves the interchange between software design and hardware in relation to customer demand.  Moses has been an integral part of its operations and is vital to its continued growth.  It has endured net operating losses for at least the past three years.

Moses is a reserve police officer for the Sweet Water Police Department in Dade County, Florida, and recently had to attend a few weeks of reserve duty training.  During this time Moses continued to tend to the affairs and operations of Land-Cellular from a remote location by cellular telephone and other technological means of access.  He did not at any time let the affairs of Land-Cellular go unattended.  Moses typically works in excess of twelve hours a day in advancing the business interests of Land-Cellular.  He has not taken any significant time off for some time.  Moses receives a salary of $700.00 per week, but often goes without payment in order to further the growth of the company.  Land-Cellular has a total of six employees and significant effort is made to assure that payroll is timely made.  Land-Cellular had approximately 1.4 million in sales last year.  Significant revenue is re-invested in research and development, which in turn

6

keeps Land-Cellular competitive and increases its value.

Plaintiff testified that he is a self-employed builder and developer who owns 18.5 % of the stock of Land-Cellular. He gave his own "real money" to provide the $200,000.00 for the funding agreement at issue and from his perspective all of Land-Cellular's assets are "his" assets as a result of the default. He believes that defendants are taking money and spending it as they please, such as for paying Moses' salary and moving it outside the corporate structure. He further believes the reason defendant is losing money is that defendants are making a concerted effort to keep it from plaintiff's grasp. Land-Cellular's books are "a mess" and reflect co-mingling between business activities and Moses' personal activities. From his perspective a receiver will better serve the interests of all involved because Moses is not essential to the operations of Land-Cellular, and removing Moses will (1) avoid plaintiff's need to seize all of Land-Cellular's assets and execute on them and (2) better protect the interests of the other board members and other unsecured creditors.

Plaintiff offered nothing beyond shear speculation and conjecture to support the majority of his assertions for equitable relief. The only basis for his allegations that Moses has been absent from the business, is considering dismantling the business because he is disgusted, and has been diverting proceeds and assets from Land-Cellular was his own recollection of past comments by board member Christian Panagakos, who admittedly would not voluntarily appear on plaintiff's behalf. In addition, there was no evidence that Land-Cellular is improperly sheltering assets or diverting funds to defeat plaintiff's security interest.

Interestingly, Christian Panagakos's sworn statement in support of defendant's opposition directly refutes or undermines effectively all of the propositions attributed to him by plaintiff. Panagakos indicates he, Moses and Zokaites have over the years collectively lent Land-Cellular several hundreds of thousands of dollars to assist in funding its operations. Panagakos previously was the chief financial officer for Land-Cellular, has a 5.8 % equity interest in Land-Cellular, and is owed at least $155,000.00 in unpaid, accrued salary, and principal and interest. He was in

contact with Moses over the two or three weeks when Moses was not at work and the two discussed Land-Cellular business. Moses was always available to discuss business and on some days there were several calls between the two. In addition, Panagokos is aware of Moses meeting regularly with key vendors and potential customers to discuss product design, functionality and pressing technical support issues. From his perspective the injunctive relief sought by Zokaites has the potential to be very disruptive and could cripple Land-Cellular's ability to continue operations. He likewise believes that removing Moses would be detrimental to Land-Cellular's ability to flourish as a viable entity and reward/satisfy all of its investors/creditors.

Requests for injunctive relief invoke the court's equitable discretion. Resolving such motions requires a delicate balance of equitable factors. Requests for injunctive relief are to be resolved on a case-by-case basis. There are four general requirements: the moving party must (1) produce evidence sufficient to convince the court that in absence of the relief requested imminent irreparable injury will result; (2) establish a likelihood of success on the merits; (3) demonstrate that granting the relief will not result in greater harm to the other party; and (4) establish that granting the relief will be in the public interest. Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1985); Campbell Soup Co. v. Conagra, Inc., 977 F.2d 86, 90-91 (3d Cir. 1992); ERCI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (citing SI Handling Systems, Inc., v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). All of the above factors are balanced with regard to any final decision and the strength of any one factor may affect the necessary showing with regard to another. Marxe v. Jackson, 833 F.2d 1121, 1128 (3d Cir. 1987).

A clear showing of an imminent irreparable injury is an absolute necessity. Marxe, 833 F.2d at 1128 (citing Moteles v. University of Pennsylvania, 730 F.2d 912 (3d Cir.), cert. denied, 469 U.S. 855 (1984) and A.O. Smith Corp. v. F.T.C., 530 F.2d 515, 525 (3d Cir. 1986)); ECRI, 809 F.2d at 226. "Establishing a risk of irreparable harm is not enough." A "clear showing of immediate irreparable injury" is required. ECRI, 809 F.2d at 226 (citing Continental Group, Inc.

8

v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980)). "The 'requisite feared injury must be irreparable — not merely serious or substantial,' and it "must be of a peculiar nature, so that money cannot atone for it." Id. (citing Glassco Hills, 558 F.2d 179, 181 (3d Cir. 1977)). Injunctive relief will not be granted merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will injunctive relief be granted "to restrain one from doing what one is not attempting and does not intend to do." Campbell, 977 F.2d at 92 (citing Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980)).

Plaintiff has failed to proffer evidence to carry his burden on any of the factors necessary for the extraordinary relief he seeks. There was no competent evidence to support a finding that without an injunctive order plaintiff will be injured in a peculiar manner that cannot be rectified by the payment of money. In fact, according to Panagakos, Zokaites has stated that his primary objective is to be repaid the monies he lent with full interest plus attorneys' fees and costs. Plaintiff's testimony at the hearing was to the same effect. The feared injury of losing the ability to collect on a debt is simply not a form of irreparable injury warranting injunctive relief, particularly were there is not one shred of evidence to indicate Moses is diverting anything from the legitimate operations of Land-Cellular or is otherwise exerting less than his full commitment toward forwarding its business affairs.

In addition, while plaintiff claims that his ability to establish a breach of the funding agreement and an entitlement to a monetary judgment are relatively straightforward and unassailable, the claims defendants have advanced in the Southern District of Florida, which would have to be asserted as counterclaims in this action as well, must be taken into account in balancing the equitable factors necessary for injunctive relief. At a minimum, plaintiff's cursory and dismissive treatment of these claims falls woefully short of demonstrating a clear likelihood of success on the merits of the equitable claims advanced in this court.

The record as a whole also makes clear that the extraordinary relief sough by plaintiff would be very detrimental to Land-Cellular's operations and its ability to satisfy the equity

interests of all of its investors and the debts owed to its other creditors. The fact that Land-Cellular has a negative balance sheet or lost money in 2005 are not bases from which to conclude otherwise. Plaintiff admitted that the company has had negative net losses for the last several years and he was thus well aware of this aspect of Land-Cellular's operations prior to deciding to enter into the funding agreement. Nothing has changed to warrant the relief requested.[2]   And jamming Land-Cellular's operations by imposing the injunctive relief requested would be far more detrimental to defendants and Land-Cellular's other shareholders and creditors. It follows that such relief would not be in the public interest as well.

Plaintiff has failed to carry his burden of establishing a basis for the extraordinary relief he requests from this court at this juncture of the proceedings. Accordingly, plaintiff's motion for an emergency temporary restraining order must be denied.

Defendants filed a motion to dismiss, stay or transfer this action as a responsive pleading to plaintiff's complaint. Defendants maintain that the instant action should be dismissed, stayed or transferred pursuant to the doctrine of the "first-filed rule," which recognizes that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." Crosely Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941). They argue that the two actions are sufficiently related and none of the narrow exceptions to the doctrine are in play.

Plaintiff asserts that the two actions are not sufficiently related because each seeks different relief, and "[t]he only commonality between the two actions is the March 28, 2005 loan." According to plaintiff, both actions may proceed simultaneously because the amount of the loan is not in dispute and Land-Cellular's request to have the principal extinguished is not an appropriate remedy under Florida law. More importantly, plaintiff contends the loan contains a

---

[2] In fact, the only thing that appears to be different is that a serious suitor has courted Land-Cellular but desires to purchase the company with the unanimous support of its board of directors. The inference is raised that plaintiff was perfectly happy with collecting monthly interest on the funding agreement until this potential opportunity surfaced.

"forum selection clause" that bars application of the first filed rule.

Plaintiff's contention that the referenced clause in the funding agreement operates as a forum selection clause is misplaced. The funding agreement provides:

> THE DEBTOR IRREVOCABLY SUBMITS AND CONSENTS TO THE JURISDICTION OF ANY COURT OF THE STATE OF PENNSYLVANIA LOCATED IN ALLEGHENY, AND WAIVES ANY AND ALL OBJECTIONS TO JURISDICTION OR VENUE THAT ANY SUCH PARTY MAY HAVE UNDER THE LAWS OF THE STATE OF FLORIDA OR OTHERWISE IN THOSE COURTS IN ANY SUCH SUIT, ACTION, OR PROCEEDING.

Funding Agreement at ¶ 9(h). Plaintiff contends this clause reflects the parties' understanding that jurisdiction over any dispute arising out of the funding agreement is vested exclusively in a Pennsylvania tribunal and thus this court. This reading of the clause is unavailing for several reasons.

First, the clause reflects the debtor's (Land-Cellular's) consent to jurisdiction and venue in "any court of the state of Pennsylvania located in Allegheny" and its agreement to submit to that jurisdiction and venue without objection. But such consent to jurisdiction and venue clauses are not properly construed as the type of exclusive forum selection clause plaintiff so dogmatically seeks to superimpose into the parties' agreement.

To be sure, in the absent of fraud or undue influence, a clear and unequivocal clause that vests exclusive jurisdiction in a particular forum will be recognized as a "forum selection clause" and enforced as a substantive provision of the parties' agreement. See John Wyeth & Brother Limited v. CIGNA International Corp., 119 F.3d 1070, 1074 (3d Cir. 1997 (enforcing "forum selection clause" providing the parties' agreement "shall be governed by and construed in accordance with English law, and the English Courts shall have exclusive jurisdiction in relation to any dispute arising under or out of or in relation to [the parties'] Agreement" as clear and unambiguous expression of the parties' intent to select exclusive forum); Salovaara v. Jackson National Life Ins. Co., 246 F.3d 289, 298-300 (3d Cir. 2001) (recognizing "forum selection clause" providing that "[n]o such claim shall be commenced, prosecuted or continued in any

11

forum other than the courts of the State of New York located in the City and County of New

York or in the United States District Court for the Southern District of New York" as clear and

unambiguous expression of parties' selection of exclusive forum in affirming district court's

dismissal of action commenced in United States District Court for the District of New Jersey);

Cresent International, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988)

(enforcing as exclusive "forum selection clause" provision in real estate contract mandating that

"any litigation upon any of [the agreement's] terms ... shall be maintained" in a state or federal

court in Miami, Florida); National Micrographics Systems, Inc. v. Canon U.S.A., Inc., 825 F.

Supp 671, 673-677 (D. N.J. 1993) (giving effect to exclusive "forum selection clause" provision

that "all causes of action ... between the parties hereto shall only be brought in a local, state of

federal court situated within the State of New York" through §1404(a) transfer). But where the

agreement indicates the parties only agreed that a particular forum was appropriate and each

party will "irrevocably submit" to the jurisdiction of that forum, a permissive forum clause is

created and redress may be obtained in another appropriate court. See Proyecfin De Venezuela,

S.A. v. Banco Industrial De Venezuela, S.A., 760 F.2d 390, 397 (2d Cir. 1985) (clause providing

that legal action may be brought in "the High Court of Justice in England, the Courts of the State

of New York, the Courts of the United States of America in New York or the courts of the City

of Caracas, Venezuela" and requiring each party to "irrevocably submit[]" to jurisdiction of any

such court reflected permissive forum selection clause that was not overridden by clause

providing that "[f]or all purposes that are derived from the present Agreement, there is selected

as the special and exclusive domicile the City of Caracas, Venezuela to whose Courts the parties

specifically declare are subject" because the jurisdiction clause "left open the possibility that an

action could be brought in any forum where jurisdiction can be obtained either inside or outside

of Venezuela."). And a clause wherein a party consents to the jurisdiction and venue of a remote

tribunal without more falls far short of a clause vesting exclusive jurisdiction over all the parties'

dealings in that tribunal. See Koresko v. Nationwide Ins. Co., 403 F. Supp.2d 394, 400 (E.D. Pa.

12

2005) ("where parties enter into a contract and merely consent to jurisdiction in a particular forum, they do not preclude the jurisdiction of other forums.") (quoting from and collecting cases in support). And this is so even where such a clause is accompanied by a choice of law provision making that state's law applicable to the agreement. Id. To argue otherwise "conflate[s] the concept of forum selection with that of consent to venue and personal jurisdiction." Id. While "the former provides that all litigation under the contract must be brought in the selected forum, the later permits but does not compel that the action be brought in a particular jurisdiction." Id.

Paragraph 9(h) of the funding agreement merely reflects Land-Cellular's consent to jurisdiction and venue in "any court of the state of Pennsylvania in Allegheny." There is nothing in the clause or any other section of the agreement for that matter to support plaintiff's bald assertion that the parties selected Pennsylvania as an exclusive jurisdiction for resolution of any and all disputes that might arise between them.

Second, even assuming that paragraph 9(h) could somehow be read to be a reflection of the selection of an exclusive forum, plaintiff has waived any right to rely on that exclusivity. Our job in interpreting the parties' contract is to give effect to the intent of the parties as objectively manifested by the terms of their agreement. Espenshade v. Espenshade, 729 A.2d 1239, 1243 (Pa. Super. 1999). The intent of the parties to a written agreement is to be ascertained in the first instance from the writing itself, and where the words contained in the agreement are clear and ambiguous, their intent must be ascertained from the expressed language chosen by the parties. Martin v. Monumental Ins. Co., 240 F.3d 223, 232-33 (3d Cir. 2001); Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982) ("It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and if the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."); Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385, 390 n.5 (Pa. 1986) (same). Consistent with this principle it is the accepted and plain meaning of the language chosen by the parties that controls the construction to be given to the agreement.   J.K. Willison, Jr. v. Consolidated Coal

13

<u>Co.</u>, 637 A.2d 979, 982 (Pa. 1994).

But where an ambiguity exists in a written contract, the court may resort to extrinsic or collateral circumstances to resolve that ambiguity, "irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." <u>Hutchinson</u>, 519 A.2d at 390. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. <u>Id.</u> (citing <u>Metzger v. Clifford Realty Corp.</u>, 476 A.2d 1, 5 (Pa. Super. 1984)). It is the court's obligation to determine whether an ambiguity exists, whereas the finder of fact resolves conflicts in parole or extrinsic evidence submitted to resolve a dispute. <u>Id.</u>

In ascertaining the meaning of any contractual provision, the court's focus is not on whether the clause applies in some general sense, but instead is dependant upon "what the *specific clause at issue* says." <u>John Wyeth & Brother Limited</u>, 119 F.3d at 1076 (emphasis in original). The language reflected in paragraph 9(h) mandates that Land-Cellular consent to jurisdiction and venue in "any court *of* the state of Pennsylvania in Allegheny." A federal district court is a court of the United States, not a court of the state of Pennsylvania. While Plaintiff initially filed his action in a court of the state of Pennsylvania in Allegheny, that being the Court of Common Pleas of Allegheny County, defendants displaced that founding of jurisdiction and venue by removing the action pursuant to 28 U.S.C. § 1441.

By agreeing to "irrevocably submit" to a court of the state of Pennsylvania, the defendants contractually limited their ability to avail themselves of any right to defend in another forum with regard to matters expressly governed by the agreement. <u>See</u> <u>Capital Bank and Trust Co. v. Associated International Ins. Co.</u>, 576 F. Supp. 1522 (M.D. La. 1984) (remanding action pursuant to service of suit clause that required the defendant to submit to jurisdiction selected by insured and did not preserve right to remove: "[b]y agreeing to 'submit' to a state forum, the defendant insurer waives the right to defend in federal court.") (citing <u>Perini v. Orion Ins. Co.</u>, 331 F. Supp. 453 (E.D. Cal. 1971)). Defendant removed this action on January 12, 2006. Under

the current version of 28 U.S.C. § 1447(c) plaintiff had thirty days to challenge the propriety of that removal on the basis of any defect other than the lack of subject matter jurisdiction. See Cook v. Wikler, 320 F.3d 431, 435 (3d Cir. 2003) (discussing implications of 1996 amendment to 1447(c) and opining that "the plain language of the amended statute now applies 'broadly to include all removals that are not authorized by law.'") ( quoting Pierpoint v. Barnes, 94 F.3d 813, 817 (2d Cir.1996); see also Commentary on 1996 Revision of section 1447(c) by David D. Siegel (2005 Cumulative Pocket Part ) (the broad division effectuated by the 1996 amendments casts a wide net effectively sweeping within the 30 day limit all challenges to improper removal other than those based on subject matter jurisdiction). Plaintiff did not file a motion to remand within that time. The right to rely on the consent to jurisdiction and venue clause as a means of controlling the forum in which the litigation goes forward thus has been waived.[3]

Third, the consent to jurisdiction and venue clause does not clearly specify the scope of claims subject to its application. In paragraph 9(i) the parties did specify that controversies that "arise under" the funding agreement or other agreements related thereto and transactions contemplated in the funding agreement would present "difficult and complex" issues and therefore "any court proceeding arising out of any such controversy will be tried in a court of competent jurisdiction by a judge sitting without a jury." Thus, the parties contemplated that their understanding would extend to claims under the funding agreement or related agreements, but placed no jurisdictional or venue restrictions on trying such claims beyond litigating them in "a court of competent jurisdiction."

---

[3] In reaching this determination we have not overlooked the well established principle that a waiver of the right of removal must be clear and unequivocal. Capital Bank And Trust Co., 576 F. Supp. at 1524. But the cases are legion with examples of clauses that reserve the right in clear and unequivocal terms. See Salovaara, 246 F.3d at 298; Cresent, 957 F.2d 943; National Micrographics Systems, 825 F. Supp. at 673-677. And it takes little effort to reserve that right by adding the phrase "or a federal court in that county." The frequent use of such clauses simply reinforces the conclusion that by choosing to have defendants "irrevocably submit" to "a court of the state of Pennsylvania in Allegheny," the parties chose language that objectively curtailed defendant's right to defend in federal court after plaintiff filed in the selected forum.

15

But even assuming that paragraph 9(i) is to be read in pari materia with 9(h) in reflecting the scope of claims subject to the consent to jurisdiction and venue clause, plaintiff's complaint advances claims for equitable relief that extend far beyond a mere breach of contract claim seeking a legal judgement. Plaintiff likewise does not merely seek to execute on specific assets or accounts receivable to collect on a recorded judgement. Beyond these straightforward claims that could be said to arise under the funding agreement, plaintiff advances claims for far-reaching injunctive relief in the form of a receiver, tort liability for civil conspiracy, and personal liability for failure to observe corporate formalities. Such claims implicate the rights of additional parties not subject to this court's jurisdiction and present matters seemingly governed by the corporate and tort laws of Florida. Consequently, they are beyond the scope of by the funding agreement and cannot be controlled by the consent to jurisdiction and venue clause contained therein. Compare John Wyeth & Brother Limited, 119 F.3d a 1074 (opining that scope of exclusive forum selection clause containing phrase "any dispute arising ... in relation [to the parties' agreement]" extended to disputes having a logical or causal connection to the parties agreement).

The clause in 9(h) of the parties funding agreement reflects a consent to jurisdiction and venue clause reflecting permissive but not an exclusive selection of jurisdiction and venue available to plaintiff. Plaintiff waived any right to insist on a straightforward application of the mandated jurisdiction and venue by failing to object to defendant's removal to this court in a timely manner, and a wooden application of the clause would be inappropriate in any event because plaintiff has presented claims that clearly exceed the scope of the funding agreement and implicate the rights of distant parties beyond the jurisdictional reach of this court. Accordingly, the clause in paragraph 9(h) does not bar the relief defendants seek in their motion to dismiss, stay or transfer.

Careful consideration of the policies and tenants underlying the first-filed rule and the factors governing a discretionary transfer of venue under 28 U.S.C. § 1404(a) warrant the transfer of this action to the Southern District of Florida.

16

The first-filed rule is designed to promote sound judicial administration and comity among federal courts of equal rank. FMC Corp. v. AMVAC Chemical Corp., 379 F. Supp.2d 733, 738 (E.D. 2005). The doctrine is applicable where the parties have instituted competing or parallel litigation in separate federal courts. One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 326 (D. N.J. 1997). The rule is grounded in preserving scarce judicial resources by avoiding duplicative litigation and preventing the judicial embarrassment of conflicting judgements. EEOC, 850 F.2d at 977. Application of the rule is to be guided by "what is right and equitable under the circumstances and the law" and the result warranted by reason and the sound exercise of judicial discretion. Id. (quoting Langnes v. Green, 282 U.S. 531, 541 (1931)).

The rule is presumptively applicable in cases of concurrent federal jurisdiction. Id. Nevertheless, courts are to avoid "wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith or forum shopping." Id. at 972. Additional exceptions include where the second-filed action is substantially further along than the first or the first-filed action constitutes an anticipatory filing. Koresko, 403 F. Supp.2d at 399.

Plaintiff essentially argues that defendants' suit in the Southern District of Florida reflects an anticipatory filing seeking to preempt the inconvenience that would be created by plaintiff's inevitable filing in Pennsylvania and thus an act of bad faith. He further asserts that defendants failed to reveal that suit had been filed on December 8, 2005, during the time immediately thereafter when the parties engaged in settlement discussions. His basis for these contentions is that defendants did not reveal that the law suit had been filed between December 8, 2005, and the date he was served, December 15, 2005. During this time the parties attempted to amicably resolve their dispute. The bad faith according to plaintiff was an attempt to lull him into in action and delay his filing suit in Pennsylvania.

"Some evidence that a first-filed case was filed for the purpose of forum shopping or in bad faith is necessary before courts find it was improperly anticipatory, and therefor warrant[s]

17

a departure from the first-filed rule." Id. at 401. Of course, the mere delaying of notice and service of a complaint in the hopes of avoiding litigation through settlement does not constitute bad faith or improper forum shopping where both parties had a reasonable apprehension that filing suit was imminent. Biogen, Inc. v. Shering AG, 954 F. Supp. 391, 397-98 (D. Mass. 1996). This is particularly true where, as here, the first-filed suit was commenced in a forum having a logical and appropriate connection to the parties' dispute. As is evident from a review of the complaints in each action and the record before this court, the parties' disagreement involves much more than the "simple collection action" characterization advanced by plaintiff. Both parties' claims encompass matters implicating or governed by Florida law and involve evidence and witnesses subject to the jurisdiction of the Southern District of Florida. Under these circumstances defendants efforts to avoid costly litigation through settlement cannot be converted to a sword of bad faith. See Oak Associates, Ltd. v. Palmer, 2006 WL 293385 (E.D. Pa. 2006) (logical factual and legal connection to forum of first-filed case generally precludes displacement of the rule based on vague invocations of the exception circumstances warranting departure from the rule).

Moreover, there is no basis to assume that commencing litigation in the Southern District of Florida was designed to give defendants a tactical advantage. "The act of forum shopping is the selection of a court with an eye towards gaining an advantage based on the forum's favorable substantive law or the avoidance of unfavorable law in an alternative forum." Id. at * 3; EEOC, 850 F.3d at 969; Koresko, 403 F. Supp.2d at 400 n. 8. Selecting a forum for convenience is not a form of forum shopping. Id.

The funding agreement contains a provision declaring it is to be construed in accordance with and governed by Pennsylvania law, subject to the Uniform Commercial Code of Florida. The parties' dispute concerning whether Florida or Pennsylvania's laws control the issue of whether the interest rate of the funding agreement was usurious, and if so, what remedies are available, is not dependent upon where the action was filed; each court is competent to ascertain

the law governing the respective components of the claims between the parties and resolve their disputes after the issues have been properly joined and the record appropriately developed. No showing has been made that the resolution of any issue in the case is dependent upon which forum maintains jurisdiction over the parties' claims. Thus, there is no specter of inappropriate forum shopping.

Because no exceptions to the rule are present, its application is warranted. Under the rule this action may be dismissed or stayed. See Kerotest Mfg. Co. v. C-O-Two Fire Equipment, Co., 342 U.S. 180, 183-84 (1952). It also may be transferred. Koresko, 403 F. Supp.2d at 403. Here, a balancing of the factors generally governing venue favors a transfer.

In considering a § 1404(a) motion to transfer, the first step is to determine whether the action "might have been brought" in the transferee forum. The transferor court must determine whether the plaintiff has an unqualified right to commence the action in the transferee district and whether the transferee forum has the power to exercise personal jurisdiction over all defendants. Camasso v. Dorado Beach Hotel Corp., 689 F. Supp. 384, 386 (D. Del. 1988) (citing Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960)). It is undisputed that the action could have been filed in the United States District Court for the Southern District of Florida and it would have jurisdiction over the matter and all parties. Thus, the action could have been filed there.

In considering a transfer pursuant to § 1404(a) there is no precise limit on the number of factors the court may consider. The analysis is flexible and must be guided by the facts and circumstances of the case. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50 (1981); Van Dusen v. Barrack, 376 U.S. 612, 623 (1964); Sandvic, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 307 (D. N.J. 1998). All relevant factors are to be considered in determining whether on balance the litigation would more conveniently proceed and the interests of justice would be better served by the requested transfer to a different forum. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

The moving party has the burden of submitting adequate information to justify the

19

transfer. American Tel. & Tel. Co. v. MCI Communication Corp., 736 F. Supp. 1294, 1306-07 (D. N.J. 1990). Consideration involves the relevant private and public interest factors at issue. The private interest factors include: (1) plaintiff's choice of forum, (2) ease of access to sources of proof, (3) costs involved in obtaining the attendance of willing witnesses, (4) compulsory process for unwilling witnesses, (5) practical problems that make a trial easy, expeditious and inexpensive and (6) the convenience of the parties. Public interests factors are: (1) congestion of court dockets, (2) choice of law considerations and (3) community interests in having a dispute resolved in a local forum. See Gulf Oil Corp. v. Gilbert, 303 U.S. 501, 508-09 (1947); Jumara, 55 F.3d at 879; Luca Oil Drilling Co. v. Gulf Oil Corp., 593 F. Supp. 1198, 1200 (W.D. Pa. 1984).

The first step in analyzing the private interest factors is to determine the proper weight to be accorded to the plaintiff's choice of forum. Where the plaintiff has chosen a legally correct forum which is the forum of the plaintiff's residence, there is a strong presumption in favor of the plaintiff's choice which should not be lightly disturbed. Shutte v. Armco Steel Co., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). However, where none of the conduct complained of occurred in plaintiff's chosen forum, plaintiff's choice is entitled to less deference. See Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Later-Day Saints, 476 F. Supp. 381, 383 (E.D. Pa. 1979).

Here, plaintiff resides in this forum and the funding agreement calls for the application of Pennsylvania. Thus, in general, plaintiff's choice of forum is not to be lightly disturbed. But plaintiff has not identified any alleged wrongful conduct that occurred in this district and the focus of his complaint is to impose equitable directives on a foreign corporation whose property and operations are located in Southern Florida. His claims for injunctive relief, a receiver and piercing the corporate veil are premised on conduct that occurred and involve property located in Southern Florida. The forcefulness of the presumption created by plaintiff's choice of a forum appropriately is diminished under these circumstances.

20

The other relevant factors also must be examined to determine if the convenience of the parties and witnesses, together with the interest of justice, warrant transfer. Luca Oil, 593 F. Supp. at 1200 (citing Solomon v. Continental American Life Ins. Co., 472 F.2d 1043, 1045-46 (3d Cir. 1973)). With regard to the access to sources of proof, all of the witnesses other than plaintiff that will be involved in resolving the parties' disputes are located in or near the Southern District of Florida. Plaintiff maintains a presence in Southern Florida and has a business location in that district as well. The agreement was administered by defendants in that district and Land-Cellular maintains its books and records in that district. It has no books or records in this district.

Furthermore, none of the underlying corporate business occurred in this district. All of Land-Cellular's employees who are knowledgeable about the matters implicated by plaintiffs' complaint work in the Southern District of Florida. Neither party has any relevant employees that work in the Western District of Pennsylvania. All of Land-Cellular's directors and equity owners except plaintiff reside in or considerably closer to the Southern District of Florida. Thus, when considered on balance it appears that litigating the matter in that district will be more convenient and less expensive for the individuals who will be required to provide testimony to resolve the parties' disputes.

In addition, all instruments securing property for the funding agreement are located in the Southern District of Florida and their validity is dependent upon Florida law. Any order or judgement issued on plaintiff's claims would have to be enforced in Southern Florida.

The need for compulsory process also is an important consideration in deciding transfer motions. Rowles v. Hammermill Paper Co. Inc., 689 F. Supp. 494, 496 (E.D. Pa. 1988). Defendants have not identified any unwilling witnesses. Nevertheless, it is clear that this district would not likely have compulsory process over many of the individuals and third parties who may have information concerning the operations of Land-Cellular. Plaintiff's testimony at the hearing concerning the statements by Panagakos and his unwillingness to travel to Pennsylvania "without a subpoena" forcefully illustrates this point. Panagakos is clearly beyond the subpoena

21

power of this court.

All of the above factors discussed weigh in favor of transfer. Taken as a whole, they established that litigating the action in the Southern District of Florida will assist in resolving any practical problems that may arise. Taking into the account the interests of everyone affected, a transfer will make the trial easier, more expeditious and less expensive.

The public interest factors also weight in favor of transfer. First, the parties have not presented any evidence of record that suggests that this action would be disrupted or proceed more slowly in the Southern District of Florida. Furthermore, judicial preparations and efforts are a factor to be considered. Kirschner Brothers Oil, Inc., v. Pannill, 697 F. Supp. 804, 806 (D. Del. 1988). Because of the relatively short period of time the instant action has been on this court's docket and the lack of any formal development of the record, a transfer will not significantly disrupt the litigation or result in a waste of judicial resources. The laws of each jurisdiction are raised by the breadth of the claims advanced by the parties. In addition, to the extent there is a forum with a center of gravity connected to the entire controversy raised by plaintiff's complaint, it appears to be the Southern District of Florida.

Although plaintiff's choice of forum is entitled to some deference in the present action, a balancing of all the appropriate factors raised by the parties' submissions indicates defendants have carried their burden of establishing that the convenience of the parties and the interests of justice warrant a transfer of this action to the United States District Court for the Southern District of Florida.

For the reasons set forth above, plaintiff's emergency motion for a temporary restraining order will be denied and defendants' motion to dismiss, stay or transfer will be granted to the extent it seeks a transfer to the United States District Court for the Southern District of Florida. Appropriate orders will follow.

Date: **March 13, 2006**

David Stewart Cercone
United States District Judge

22

cc:    Jeffrey A. Hulton, Esquire
       Brandt, Milnes & Rea
       310 Grant Street
       1109 Grant Building
       Pittsburgh, PA 15219

       Daniel P. Lynch, Esquire
       Krysia Kubiak, Esquire
       Lynch Weis LLC
       Cranberry Professional Park, Suite 10
       101 Smith Drive
       Cranberry Township, PA 16066